IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02397-KAS

CART DRIVER-HIGHLANDS, LLC,

    Plaintiff,

v.

SOCIETY INSURANCE, a mutual company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This insurance dispute arises from water damage sustained by the building in which Plaintiff operates. Defendant, Plaintiff's insurer, denied coverage for Plaintiff's losses on at least four bases. Now before the Court is Plaintiff's **Motion for Partial Summary Judgment on Declaratory Judgment Claim** [#28] ("Plaintiff's Motion") and Defendant's **Motion for Partial Summary Judgment on Declaratory Judgment Claim** [#39] ("Defendant's Motion"). The parties filed Responses [#29, #41] in opposition to each other's motions and Replies [#33, #44] in support of their own. The Court has reviewed the parties' briefing, the entire case file, and the applicable law. For the foregoing reasons, Plaintiff's Motion [#28] is **DENIED** and Defendant's Motion [#39] is **GRANTED**.

## I.    Background

According to the undisputed summary judgment evidence,[1] Plaintiff Cart Driver-Highlands, LLC operates a restaurant located at 2239, 2241, and 2445 W. 30th Avenue

---

[1] In briefing the cross motions for summary judgment, the parties submitted two Statement of Material Fact tables, in compliance with the Court's practice standards. *See* KAS Civ. Practice

in Denver (the "Premises"). *Fact Table* [#44-1] ¶ 1. The Premises is a two-story building, and Plaintiff's leased portion is located on the ground floor. *Compl.* [#3] at ¶¶ 10-11. Mainline West Municipal Securities, LLC ("Mainline") occupies the second floor of the Premises. *Id.* at ¶ 12; *Fact Table* [#44-1] ¶ 17.

In 2019, Plaintiff hired a contractor to perform renovation work on the Premises before it opened for business. *Fact Table* [#44-1] ¶ 16. The scope of the project included plumbing work underneath the building, including work on sewer pipes serving the Premises. *Id.* ¶¶ 25-26; *Fact Table* [#33-1] ¶ II. Plaintiff would later allege in its complaint that the plumbing work was "negligent" and "defective." *Compl.* [#3] ¶¶ 37, 38, 43, 53; *Fact Table* [#44-1] ¶ 36.

After noticing a foul odor in the Premises for some time, in the fall of 2023, Mainline hired an individual to investigate the source of the smell. *Fact Table* [#44-1] ¶¶ 37-43. The investigator discovered that raw sewer water had accumulated in a crawl space underneath a stairwell that connected Plaintiff's and Mainline's units. *Id.* ¶¶ 19, 30. The cause of the sewer leak was an uncapped or improperly capped sewer pipe. *Id.* ¶ 19. A restoration company pumped out roughly 5,000 gallons of raw sewer water that had accumulated under the stairwell, and Plaintiff resumed conducting business shortly thereafter. *Id.* ¶¶ 20, 45; *Compl.* [#3] ¶ 33. However, the odor soon returned. *Fact Table* [#44-1] ¶ 22.

Upon further investigation, Plaintiff discovered that additional pipes underneath its kitchen were "pouring water" into the crawlspace. *Id.* ¶ 24. The parties' Fact Table

---

Standards (V)(10); *see also Fact Table* [#33-1]; *Fact Table* [#44-1]. Because the later-filed Fact Table [#44-1] was completed with the benefit of additional discovery, the Court will primarily rely on that table to ascertain the undisputed facts, except where otherwise noted.

incorporates an allegation from Plaintiff's complaint, in which Plaintiff alleged that four or five defective plumbing lines from the kitchen were "cracked or completely broken just below floor level," that "[w]astewater was seen leaking at the time of discovery," and that the lines appeared to be leaking "from exposure to the same harmful conditions resulting from the defective plumbing . . . based on the accumulation of wastewater in the crawlspace." *Id.* ¶ 24*; Compl.* [#3] ¶ 43. Plaintiff was forced to close its business until the full scope of damage could be assessed and repaired. *Fact Table* [#44-1] ¶ 24. It was unable to reopen until January 2025. *Pl.'s Motion* [#28] at 7.[2]

Plaintiff filed a property loss claim with Defendant, which Defendant denied, citing at least six policy exclusions. *Fact Table* [#44-1] ¶ 23; *Pl.'s Ex. 9, Coverage Denial Letter* [#28-10]. Plaintiff sued, asserting the following claims for relief against Defendant: (1) declaratory judgment; (2) breach of insurance contract; (3) common law bad faith; and (4) statutory bad faith. *Compl.* [#3] at 9-12.

Plaintiff moved for partial summary judgment on its declaratory judgment claim, asserting either that the policy's plain language required Defendant to indemnify it or that an ambiguity in the policy required judgment in Plaintiff's favor. Plaintiff's briefing focused on one particular exclusion in the policy, which the Court will refer to as the "Water Exclusion." *See Pl.'s Ex. 2, Ins. Policy* [#28-3] at 36, § I(B)(1)(g). Plaintiff argued that, although on first glance, the Water Exclusion might appear to bar its claim, it does not when read in the context of the policy as a whole. *See generally Pl.'s Motion* [#28]. Defendant filed a Response [#29] in which it argued that the Water Exclusion bars Plaintiff's claim. *Response* [#29] at 9-13. Defendant further asserted that at least four

---

[2] Citations to page numbers refer to the numbering stamped at the top of each page by the Court's CM/ECF docketing system, not to the filing's original page numbering.

other exclusions bar Plaintiff's claim. *Id.* at 7-9, 13-15. Plaintiff objected, in part, on the ground that Defendant's additional arguments amounted to an improper cross motion for summary judgment. *Reply* [#33] at 8-9.

Plaintiff's objection on that front was effectively mooted by Defendant's filing of a cross motion for summary judgment. *Def.'s Motion* [#39]. In the motion, Defendant renewed its argument that the Water Exclusion bars Plaintiff's claim. *Id.* at 10-14. Defendant further argued that Plaintiff's claim is excluded under the policy because (1) the loss commenced before the policy period; (2) the loss falls within an exclusion for continuous seepage or leakage of water over a period of 14 days or more; and (3) the loss falls within an exclusion for damage caused by negligent or faulty work.[3] *Id.* at 7-10, 14-17.

## II.    Legal Standards

### A.    Fed. R. Civ. P. 56

The purpose of a Rule 56 motion for summary judgment is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1168 (10th Cir.

---

[3] In its Motion [#39], Defendant cites a third exclusion for damage resulting from neglect but makes no substantive argument concerning the same. *Compare Motion* [#39] at 14-15 (identifying the exclusion), *with id.* at 17 (propounding arguments concerning only the continuous seepage exclusion and the negligent work exclusion). Accordingly, the Court will not consider the neglect exclusion.

2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). A factual dispute is genuine if the evidence could enable a reasonable jury to find for the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671.

**B.      Interpretation of Insurance Policies Under Colorado Law**

A federal court sitting in diversity applies the choice of law principles of the state in which it sits to determine what substantive law applies. *Miller v. Am. Family Mut. Ins. Co.*, 104 F. Supp. 3d 1232, 1235 (D. Colo. 2015). "In Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued[.]" *Id.* "The interpretation of an insurance contract is a question of law that is appropriate for summary judgment." *Lua v. QBE Ins. Corp.*, 421 F. Supp. 3d 1082, 1092 (D. Colo. 2019); *see also*

*Govinda, LLC v. Columbia Mut. Ins. Co.*, 545 F. Supp. 3d 1167, 1169 (W.D. Okla. 2021) ("Interpreting insurance policies and determining policy rights and obligations are questions of law, appropriate grist for the summary judgment mill.") (internal quotation marks and citation omitted).

Colorado courts apply traditional principles of contract interpretation when construing the terms of an insurance policy. *N.H. Ins. Co. v. TSG Ski & Golf, LLC*, 128 F.4th 1337, 1345 (10th Cir. 2025). Insurance policies "must be given effect according to the plain and ordinary meaning of their terms." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1051 (Colo. 2011) (emphasis, internal quotation marks, and citation). "Courts must read the contract as a whole and give the contract terms their plain and ordinary meaning unless a contrary intent is evidenced from the policy." *AdHealth, Ltd. v. PorterCare Adventist Health Sys.*, 135 F.4th 1241, 1246 (10th Cir. 2025). If the policy is "susceptible to more than one reasonable interpretation," then "the coverage provisions are ambiguous" and must "be construed against the insurer as the drafter of the policy." *Todd v. USAA Gen. Indem. Co.*, 713 F. Supp. 3d 1088, 1098 (D. Colo. 2024).

"In determining the plain and ordinary meaning of a term in an insurance policy, the Colorado Supreme Court has eschewed the use of 'technical readings' and instead looks to 'what meaning a person of ordinary intelligence would attach to' a policy term." *Sullivan v. Nationwide Affinity Ins. Co. of Am.*, 842 F. App'x 251, 254 (10th Cir. 2021) (quoting *Bailey*, 255 P.3d at 1051). This so-called "doctrine of reasonable expectations" provides that "courts will not enforce an exclusion provision 'where an ordinary, objectively reasonable person would, based on the language of the policy, fail

to understand that he or she is not entitled to the coverage at issue.'" *Todd*, 713 F. Supp. 3d at 1098 (quoting *Bailey*, 255 P.3d at 1050)).

"The policyholder bears the burden of demonstrating coverage under an insurance policy." *Bertisen v. Travelers Home & Marine Ins. Co.*, 710 F. Supp. 3d 883, 890 (D. Colo. 2024). "If the insured satisfies their burden, the burden shifts to the insurer 'to prove the applicability of an exclusion from coverage.'" *Id.* (quoting *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1260 (10th Cir. 2020)). "If the insurer meets this burden and demonstrates that an exclusion applies, the burden then shifts back to the insured to show an exception to the coverage exclusion." *Id.*

### III.    Analysis

### A.    The Policy Period Exclusion

Defendant issued the subject Businessowners Policy to Plaintiff with property coverage of $2,375,000 and liability coverage of $1,000,000 per occurrence. *Fact Table* [#44-1] ¶ 4; *Pl.'s Ex. 2, Ins. Policy* [#28-3] at 6-7. The policy is subject to a policy period of January 20, 2023, to January 20, 2024, and the property loss portion of the policy further provides that it only "cover[s] loss or damage commencing . . . [d]uring the policy period shown in the Declarations." *Fact Table* [#44-1] ¶¶ 3, 34; *Pl.'s Ex. 2, Ins. Policy* [#28-3] at 4, 44 § I(F)(4)(a)(1).

Defendant argues that it is entitled to summary judgment because the undisputed facts establish that the damage commenced prior to the operative policy period. *Def.'s Motion* [#39] at 7. For support, Defendant points to Plaintiff's complaint, in which Plaintiff alleged that it "discovered" that the plumbing subcontractor who performed the renovation work in 2019 "negligently capped the old sewer line with an inadequate slip-on sewer cap

7

during the Remodel." *Compl.* [#3] at 6 ¶ 37. Plaintiff further alleged that the raw sewer water "had been emptying" underneath the Premises "[a]s a result of [the subcontractor's] negligent and defective plumbing work." *Id.* at 6 ¶ 38. Defendant further cites a March 2020 email from Mainline's Chief Financial Officer to Plaintiff's manager that a "musty smell," fruit flies, and dampness were present in the area near the stairwell in question. *Fact Table* [#44-1] ¶ 29; *Def.'s Ex. C, Email* [#29-4]; *Def.'s Ex. D, Request for Admission 2* [#29-5]. The email further stated that the CFO tried to find a crawlspace entrance in hopes of looking underneath the floor with no success and asked Plaintiff's manager to discuss the issue further. *Fact Table* [#44-1] ¶ 29; *Def.'s Ex. C, Email* [#29-4]. The stairwell referenced in the March 2020 email stood directly above where the uncapped sewer pipe was later discovered. *Fact Table* [#44-1] ¶ 30. Defendant argues that these undisputed facts show that the leak commenced, at the latest, in March 2020, and is therefore not covered under the operative policy. *Def.'s Motion* [#39] at 10.

Plaintiff first responds that its claim arose at the time it was discovered—in the fall of 2023. *Pl.'s Response* [#41] at 4. For support, Plaintiff cites to the definition of an "occurrence" in the liability coverage portion of the policy, which means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Fact Table* [#44-1] ¶ 57; *Pl.'s Ex. 2, Ins. Policy* [#28-3] at 64 § (II)(F)(13). Plaintiff also directs the Court's attention to two cases—each of which interpret the meaning of an "occurrence" within commercial general liability insurance policies. *See Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007) ("An occurrence sufficient to trigger coverage under an occurrence policy need not be sudden, but must be a specific accident or happening within the policy period. . . . A long term exposure to

a harmful condition that results in damage or injury may be an occurrence."); *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959 (10th Cir. 2011) ("The physical manifestation of damage and not improper installation or other faulty workmanship is the trigger for coverage."). But Plaintiff does not pinpoint how *Hoang* and *United Fire* are squarely analogous to this case, where it is undisputed that Plaintiff submitted a first-party claim for property insurance benefits under a policy that explicitly limited coverage to damage *commencing* during the policy period. *Fact Table* [#44-1] ¶ 21.

Instead, this case is more akin to *York v. Safeco Insurance Company of America*, 540 F. Supp. 3d 1049 (D. Colo. 2021), which concerned a plaintiff's claim for property insurance benefits for residential property damage. Plaintiff purchased the residence in question, and her property insurance policy took effect on the day of closing. *Id.* at 1051. The policy limited coverage to "losses occurring during the policy period." *Id.* That same afternoon, water infiltrated the home after a hailstorm. *Id.* Plaintiff tried, unsuccessfully, to stop the sale. *Id.* at 1052. She later filed a claim for property damage to the roof, windows, and exterior stucco based on purported hail damage from the storm. *Id.* at 1052-53. The claims adjuster concluded that "there was no hail damage to the exterior of the residence, but there was substantial wear and tear." *Id.* at 1052. The court held that the plaintiff failed to create a triable issue of fact because there was insufficient summary judgment evidence to link the home's roof, window, and stucco damage to the hailstorm that occurred on the first day of the policy period. *Id.* at 1055; *see also Starr Surplus Lines Ins. Co. v. Cushing Hosp., LLC*, 527 F. Supp. 3d 1327, 1340-41 (W.D. Okla. 2021) (finding for the insurance company where the evidence showed that damage from water intrusion

upon a building's first-floor slab predated the operative policy period, which included an exclusion for damages which "first existed . . . prior to the inception date of this policy"). Plaintiff cannot invoke the definition of an "occurrence" in the liability coverage section of the policy to circumvent the property coverage section's plain language limiting recovery to those damages commencing during the policy period.

Plaintiff's second argument, however, is evidentiary in nature. Plaintiff argues that, even if the policy is limited to damages commencing during the policy period, a "musty" smell is not the same as a "sewage" smell, and that a "musty smell" in an area does not prove, as a matter of law, that a sewer leak existed underneath the area at that time. *Pl.'s Response* [#41] at 9. On this point, the Court agrees. According to the undisputed facts, the defective plumbing work performed in 2019 caused water to leak into the crawlspace for "an *unknown period* prior to discovery" and "no one knows precisely when the leaks began." *Fact Table* [#44-1] ¶¶ 24, 58 (emphasis added). Defendants present some evidence that might allow a reasonable jury to infer that it began no later than March 2020. However, a reasonable jury might not be persuaded that a "musty smell" is sufficient to prove that standing water existed underneath the floor at that time. "Where different ultimate inferences may properly be drawn, the case is not one for summary judgment." *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 339 (10th Cir. 1976).

Therefore, Defendant's Motion [#39] is **denied** on the basis that the damage commenced before the operative policy period.

## B.    The Continuous Seepage Exclusion

Although reasonable juries could reach different conclusions concerning whether the leak commenced in 2023, or at some point before then, no reasonable jury could find,

based on the undisputed evidence, that the leak commenced and caused the extensive damage that it did in less than 14 days.

The exclusion section of the policy begins: "We will not pay for loss or damage caused by or resulting from any of the following[.]" *Pl.'s Ex. 2, Ins. Policy* [#28-3] at 37 § (I)(B)(2). Section (2)(n) excludes "[c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." True, the parties agree that "no one knows precisely when the leaks began." *Fact Table* [#44-1] ¶ 58. But in arguing that a genuine dispute of material fact exists as to this exclusion, Plaintiff asks the Court to infer that the leaks could have begun and caused the significant damage that they did in less than 14 days' time.

"No genuine issue of material fact exists unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (internal quotation marks and citation omitted). "And while [the Court] draw[s] all reasonable inferences in favor of the non-moving party, an inference is unreasonable if it requires a degree of *speculation* and conjecture that renders [the factfinder's] findings *a guess or mere possibility*." *Id.* (internal quotation marks and citation omitted).

No reasonable jury could return a verdict in Plaintiff's favor on the question of whether the leak commenced 14 days or less from its detection. In other words, such an inference is unreasonable in light of the following facts:

- The plumbing subcontractor who failed to cap or inadequately capped the sewer line in question did so no later than December 2019. *Fact Table* [#44-1] ¶ 27.

- In March 2020, Mainline's CFO told Plaintiff's manager that a "musty smell," fruit flies, and dampness were present near the stairwell that stood directly above the uncapped sewer pipe. *Id.* ¶¶ 29-30.

- Mainline's CFO testified that, after the 2020 email, he experienced musty smells and sewage smells that "had become pervasive at times throughout the building." *Def.'s Ex B, Caselli Depo.* [#39-3] at 33:23-24; *Fact Table* [#44-1] ¶ 40.

- Mainline's CFO testified that, "at certain a point, and I think this is like summer of '23, the changing table in one of [Plaintiff's] bathrooms would just be completely foul. So the exact same smell that we were having upstairs. That is when Cart Driver, you know, the manager started asking us about the smell." *Def.'s Ex B, Caselli Depo.* [#39-3] at 38:8-14; *Fact Table* [#44-1] ¶ 42.[4]

- In October 2023, Mainline "noticed a sewage odor" that was "strongest in the stairwell area between the first and second floors." *Fact Table* [#44-1] ¶ 17.

---

[4] Plaintiff disputes the deposition testimony as "inadmissible hearsay lacking in sufficient guarantees of trustworthiness" pursuant to F.R.E. 801(c) and 807. *Fact Table* [#44-1] ¶ 42. However, at trial, Mainline's CFO would be able to testify to what he and other Mainline officials experienced regarding the noxious odors and interactions he had with Cart Driver officials about the odors. That testimony would not be hearsay.

- Also in October 2023, the sewage smell became "so untenable" that Mainline hired a smell detective. *Id.* ¶ 18.

- On or around November 9, 2023, Mainline and Plaintiff discovered "raw sewer water" in the crawlspace from the improperly capped sewer pipe. *Id.* ¶¶ 19-20; *Pl.'s Ex 5, Insurance Claim* [#28-8] at 1.

- Roughly 5,000 gallons of raw sewer water had accumulated under the stairwell and the restaurant's dining room floor by November 2023. *Compl.* [#3] ¶ 33; *Plaintiff's Motion* [#28] at 6.

- Plumbing lines from the restaurant's kitchen were later discovered to be cracked or broken "from exposure to the same harmful conditions resulting from the defective plumbing . . . based on the accumulation of wastewater in the crawlspace." *Fact Table* [#44-1] ¶ *24; Compl.* [#3] ¶ 43.

Based on these facts, the Court cannot reasonably infer that the leak was isolated to the 14 days preceding its discovery—in other words, no earlier than October 26, 2023. *See GeoMetWatch Corp.*, 38 F.4th at 1200; *see also Metro. Life Ins. Co. v. Browning*, 839 F. Supp. 1508, 1510 (W.D. Okla. 1993) ("When assessing the evidence, but not weighing it . . . [i]mplausible inferences can be rejected.").

Plaintiff's statements of additional material fact do not persuade the Court otherwise. Plaintiff presents evidence that, in 2025, Mainline discovered that one of its bathrooms was not properly vented. *Fact Table* [#44-1] ¶ 52. The lack of proper venting meant that sewer gas was "likely burping back into the bathroom through the shower and sink drains" whenever the toilet was flushed. *Id.* ¶ 54. Plaintiff argues that it could have been the "burps" of sewer gas in the bathroom, and not the 5,000 gallons of standing

13

sewer water underneath the building, producing the odors in the stairwell and surrounding areas leading to the leak's discovery. Again, the Court will not entertain unreasonable inferences in determining whether a genuine dispute of material fact exists.

Defendant has met its burden to show that an exclusion applies, and Plaintiff fails to show an exception to the coverage exclusion. *Bertisen*, 710 F. Supp. 3d at 890. Defendant's Motion [#39] is **granted** on the basis that the damage resulted from a continuous seepage of water that occurred over a period of 14 days or more. Because the Court concludes that Plaintiff is not entitled to coverage, its Motion [#28] seeking a declaration that it is entitled to the subject coverage necessarily fails.

Likewise, Plaintiff's claims for breach of insurance contract (Claim 2), common law bad faith breach of insurance contract (Claim 3), and statutory bad faith breach of insurance contract (Claim 4) fail as a matter of law and, therefore, Defendant is entitled to summary judgment on each of those claims. *See 5333 Mattress King LLC v. Hanover Ins. Co.*, 683 F. Supp. 3d 1188, 1200 (D. Colo. 2023) (finding the defendant was entitled to summary judgment on each of the plaintiff's claims where the at-issue insurance policy did not provide coverage for the plaintiff's damages) (citing *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009); *Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1160 (D. Colo. 2019)).

### IV.    Conclusion

For the reasons set forth above, it is **ORDERED** as follows:

- Plaintiff's Motion for Partial Summary Judgment [#28] is **DENIED**.

- Defendant's Motion for Partial Summary Judgment [#39] is **GRANTED**.

- The Clerk of Court is directed to enter summary judgment in this case in favor of Defendant Society Insurance and against Plaintiff Cart Driver-Highlands on all claims.

- The Final Pretrial/Trial Prep Conference set for June 16, 2026, and the Jury Trial set to commence on July 20, 2026, are **VACATED**.

Dated: March 30, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

15