IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02397-KAS

CART DRIVER-HIGHLANDS, LLC,

Plaintiff,

v.

SOCIETY INSURANCE, a mutual company,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Motion to Alter Judgment** [#53] (the "Motion"). Defendant filed a Response [#56], and Plaintiff filed a Reply [#57]. The Court has reviewed the parties' briefing, the case file, and the applicable law. For the foregoing reasons, the Motion [#53] is **GRANTED in part and DENIED in part**.[1]

## I. Background

The factual background of this case has been set forth in the Court's Order [#48] on the parties' cross Motions for Summary Judgment [#28, #39], so the Court repeats it here only to the extent necessary to resolve the Motion [#53].

Plaintiff Cart Driver-Highlands, LLC operates a restaurant located at 2239, 2241, and 2445 W. 30th Avenue in Denver (the "Premises"). *Fact Table* [#44-1] ¶ 1. The Premises is a two-story building, and Plaintiff's leased portion is located on the ground

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Signed Consent Form* [#22]; *Order of Reference* [#23].

floor. *Compl.* [#3] at ¶¶ 10-11. Mainline West Municipal Securities, LLC ("Mainline") is another tenant in the Premises. *Id.* at ¶ 12; *Fact Table* [#44-1] ¶ 17. Defendant is Plaintiff's insurance carrier.

In 2019, Plaintiff hired a contractor to perform plumbing work, including work on the sewer pipes underneath the Premises. *Fact Table* [#44-1] ¶¶ 16, 25-26; *Fact Table* [#33-1] ¶ II. Plaintiff would later allege in its complaint that the plumbing work was "negligent" and "defective." *Compl.* [#3] ¶¶ 37, 38, 43, 53; *Fact Table* [#44-1] ¶ 36. After noticing a foul odor in the Premises for some time, Mainline investigated and discovered raw sewer water in a crawl space underneath a stairwell that connected Plaintiff's and Mainline's units. *Id.* ¶¶ 19, 30. The cause of the sewer leak was an uncapped or improperly capped sewer pipe. *Id.* ¶ 19. Plaintiff later discovered additional pipes under the kitchen leaking raw sewer water into the crawl space.

Plaintiff filed a property loss claim with Defendant, which Defendant denied, citing at least six policy exclusions. *Fact Table* [#44-1] ¶ 23; *Pl.'s Ex. 9, Coverage Denial Letter* [#28-10]. Plaintiff initiated this lawsuit, and the parties later filed cross Motions for Summary Judgment. *Plf.'s Motion* [#28]; *Def.'s Motion* [#39]. One of the policy exclusions that the parties invoked and briefed extensively was the policy's Water Exclusion and its corresponding Water Back-Up and Sump Overflow Endorsement, which respectively provided that Defendant would not pay for loss or damage caused directly or indirectly by water that backs up, overflows, or is otherwise discharged from a sewer, but that the exclusion would be modified to provide limited coverage for such losses in the amount of $15,000 for property damage and $15,000 for lost income. *Fact Table* [#44-1] ¶¶ 12, 15.

However, Defendant also argued that, if the Court held in its favor on the Water Exclusion issue, any limited recovery available under the Endorsement would still be subject to the Continuous or Repeated Seepage or Leakage of Water Exclusion (the "Continuous Seepage Exclusion"), which provided that Defendant would not cover "loss or damage caused by or resulting from . . . [c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." *Motion* [#39] at 14-17; *Fact Table* [#44-1] ¶ 31.

Recognizing that the Court might have to address the Continuous Seepage Exclusion either way, the Court cut to the chase, addressed that exclusion first, and found it dispositive. Specifically, the Court concluded that the exclusion barred coverage because no reasonable jury could return a verdict in Plaintiff's favor on the question of whether the leak occurred in 14 days or less. *Order* [#48] at 11. In reaching this conclusion, the Court relied on nine facts that, together, precluded even a reasonable inference that the leak commenced no earlier than October 26, 2023: (1) the defective plumbing work that caused the leak was performed in December 2019; (2) Mainline noticed a musty smell in March 2020; (3) Mainline continued to notice musty smells and sewage smells thereafter that were, at times, pervasive; (4) Plaintiff began noticing a similar "foul" odor in the summer of 2023; (5) Mainline pinpointed the strongest source of odor in the stairwell above the crawlspace in October 2023; (6) Mainline hired a smell detective in October 2023 based on the odor's severity; (7) the leak was discovered right below the stairwell in question in November 2023; (8) 5,000 gallons of raw sewer water had accumulated in the crawl space when the leak was discovered; and (9) the standing

raw sewer water damaged additional plumbing lines, causing further leaks. *Order* [#48] at 12-13.

Therefore, the Court granted summary judgment in Defendant's favor and against Plaintiff. *Id.* at 14. The Court further found that, because the at-issue policy did not provide coverage for Plaintiff's damages, its other claims were similarly subject to summary judgment. *Id.* The Clerk of Court entered final judgment on March 30, 2026. *Final Judgment* [#49]. Plaintiff timely filed the instant Motion [#53], asserting that the Court clearly erred in reaching its conclusion.

## II. Legal Standard

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. "A motion for reconsideration is treated as a motion to alter or amend the judgment under Rule 59(e) when filed within the time period prescribed by Rule 59(e)." *Ascent Classical Acads. v. Ascent Classical Acad. Charter Schs., Inc.*, No. 24-cv-0653-GPG-STV, 2025 WL 1014791, at *1 (D. Colo. April 2, 2025).

A final order is one that "'leave[s] nothing for the court to do but execute the judgment.'" *Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Once the court enters a final judgment "the public gains a strong interest in protecting the finality of judgments." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019); *see Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356 (2006) (discussing the "important interest in the finality of judgments"). Accordingly, the Tenth Circuit has "restricted district courts' discretion when ruling on motions based on Rule 59(e)." *Nelson*, 921 F.3d at 929. A Rule 59(e) motion is not the

appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

In this Circuit, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. The third category includes situations where "the court has misapprehended the facts, a party's position, or the controlling law." *Id.* A motion to reconsider a final order "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). "[A]s a practical matter, a party seeking reconsideration must set forth facts or law of a strongly convincing nature[.]" *Wiltberger v. Lee-Ward Partners, LLC*, No. 16-cv-00307-MSK-NYW, 2017 WL 4118446, at *1 (D. Colo. Sept. 18, 2017).

## III. Analysis

Plaintiff moves for reconsideration, asserting that the Court erred by relying on (1) an incorrect interpretation of the Continuous Seepage Exclusion, and (2) findings of fact that are not supported by the record or properly before the Court. *Motion* [#53] at 2. Accordingly, Plaintiff invokes the third ground for a motion to reconsider: the need to correct clear error or prevent manifest injustice. *See id.*

### A. Interpretation of the Continuous Seepage Exclusion

Plaintiff's first argument is that the Court erred by misinterpreting the Continuous Seepage Exclusion in "denying coverage to exclude all property damage caused by water leaks if any damage occurred after 14 days of repeated seepage or leakage of water."[2]

---

[2] As an initial matter, Plaintiff takes issue with the Court's phrasing that "Plaintiff *asks the Court* to infer that the leaks could have begun and caused the significant damage that they did in less than

*Motion* [#53] at 3. Plaintiff argues that a correct interpretation of the exclusion would allow Plaintiff to recover for any damages that it could prove it sustained during the first 13 days of the leak. *Motion* [#53] at 5. In support of its novel theory, Plaintiff cites *Wheeler v. Allstate Insurance Co.*, 687 F. App'x 757, 762 (10th Cir. 2017).

Plaintiff did not, however, present this argument to the Court in any of its summary judgment briefing. And it is not as if Plaintiff had no notice of the possibility that the Continuous Seepage Exclusion could become an issue in this matter. Defendant invoked the Continuous Seepage Exclusion in its coverage denial letter, *Fact Table* [#44-1] ¶¶ 23, 33; *Pl.'s Ex. 9, Coverage Denial Letter* [#28-10]; its Response [#29] to Plaintiff's partial Motion for Summary Judgment [#28]; and as a ground to deny coverage in its Motion for Summary Judgment, *see Motion* [#39] at 15-16. Thus, Plaintiff knew about the possible applicability of the exclusion and chose not to address it in detail. *See Pl.'s Response* [#41] at 7-8. Plaintiff did not, as far as the Court can tell, anywhere assert that it would seek to prove separate damages for the first 13 days of water damage pursuant to *Wheeler* to get around the Continuous Seepage Exclusion. A Rule 59(e) motion is not an appropriate vehicle to "raise arguments . . . that could have been raised prior to the entry

---

14 days' time." *Motion* [#53] at 4 (citing *Order* [#48] at 11) (emphasis added). Plaintiff states that it never argued that its damages occurred within the first 13 days of leakage, suggesting that the Court somehow overstepped by considering the timing and duration of the leak. The argument is not well taken. *See Pl.'s Response* [#41] at 7 ("Society argues that the exclusion from coverage for damage caused by continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more applies, but there are genuine disputes of fact over (i) when the water damage began, and (ii) whether leakage was continuous or repeated."); *id.* at 7-8 ("At minimum, the undisputed fact that water was present in the crawlspace for 'an unknown period' of time must be interpreted to raise an inference in favor of the non-moving party."). Plaintiff's argument that the "timing" of the damage was "not presented to the Court for summary judgment," is simply incorrect. The applicability of the Continuous Seepage Exclusion (and, for that matter, the timing of the damage in relation to the policy period at large) were squarely before the Court on summary judgment. *See Motion* [#39] at 15-16; *Response* [#41] at 7-8; *Reply* [#44] at 11-12.

of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). This ground alone supports denying the Motion [#53].

But even turning to the merits, Plaintiff's argument is unavailing. In *Wheeler*, the plaintiff's seasonal cabin sustained a flood that was not discovered until approximately two months after it began. 687 F. App'x at 759. The case proceeded in almost identical fashion to this matter. However, in *Wheeler*, when the defendant invoked a similar continuous seepage exception in its motion for summary judgment, the plaintiff responded by arguing, as relevant here, that the exclusion did not apply because "he claimed coverage only for damage which occurred within 13 days of the water release." *Id.* at 760. Plaintiff "stressed he was not seeking to recover for damages that were caused over a longer period of time or that 'would have been exacerbated by a delay in discovering the flood,'" namely, mold damage. *Id.* at 761. Instead, he filed a claim only for the portion of the water damage that occurred within 13 days of the water's release, which his expert was able to parse from the longer-term damage. *Id.* During the course of discovery, the insurer's expert admitted in her deposition that "there would be coverage for damage inflicted during the first 13 days," provided that there was a way to determine what damage occurred during that period. *Id.* at 761. The plaintiff retained an expert who was able to parse the short-term damages from the long-term damages. *Id.* Thus, the *availability* of recovery for short-term damages was an undisputed fact among the parties, although the *ability* to sever the short-term and long-term damages was hotly contested.

In its summary judgment order, the district court concluded that "[b]ecause the damage to [the plaintiff's] cabin was so extensive and was not found for at least 60-70 days, it is difficult if not impossible for the Court to determine exactly what amount of

damage would have occurred in the first few hours and days." *Id.* at 762. The court did not acknowledge the fact that the parties *agreed* that recovery for short-term damages was available if such damages could be severed and proven. *Id.* at 763. The Tenth Circuit concluded that, on those facts, the district court erred. The Tenth Circuit held that the district court necessarily rejected the plaintiff's argument that he "could meaningfully distinguish between short-term and long-term water damage in a situation involving at least some long-term damage" in the face of a genuine dispute of material fact on that issue. *Id.* at 768. Thus, summary judgment was improper. Of course, the Tenth Circuit recognized that long-term water damage is "unambiguously" precluded by such continuous seepage exclusions. *Id.* at 769.

Thus, *Wheeler* does not stand for a proposition as broad as Plaintiff would like—*e.g.*, that all continuous seepage exclusions allow for recovery for damages sustained during the first 13 days of a flooding event. *See Motion* [#53] at 7. Instead, it stands for the proposition that, where an insured files a claim only for the portion of damages that occurred during the first 13 days of a flood and offers evidence that the short- and long-term damages are severable, the ability to sever such damages amounts to a disputed material fact on summary judgment, and a district court errs by resolving that factual dispute in the insurer's favor as a matter of law. *See id.* at 763-64. At bottom, *Wheeler* is a case about the severability of short- and long-term damages where the plaintiff seeks to recover only the short-term damages.

And that is where *Wheeler* and this case fundamentally diverge. This case was never about the severability of short- and long-term damages. If that theory had been at play, Plaintiff could have directed the Court to *Wheeler* and to some evidence, any

evidence, suggesting the possibility of partitioning its damages such that the exclusion did not apply. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (After the movant makes a prima facie demonstration of the absence of a genuine issue of material fact, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.") (quoting FED. R. CIV. P. 56(e)). But Plaintiff offered not a scintilla of evidence that such severability is possible here, and its bald assertion that it will prove so at trial comes too late. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5 (Rule 59(e) motions may not be used to "present evidence that could have been raised prior to the entry of judgment."); *see also Croxdale v. Travelers Home & Marine Ins. Co.*, No. 4:24-CV-00048-RGE-SBJ, 2025 WL 2888367, at *5 (S.D. Iowa June 23, 2025) ("In any event, even if the Court accepted Plaintiffs' proposed interpretation, summary judgment for Travelers would remain appropriate. In *Wheeler* . . . the plaintiffs had supported their cases with expert reports detailing damages that had occurred prior to the fourteenth day. As already noted, Plaintiffs provide no such evidence.").[3]

The onus was on Plaintiff to demonstrate that a genuine dispute of material fact existed as to whether Plaintiff could recover its short-term damages pursuant to *Wheeler*. To the extent that Plaintiff complains that this question of partitioning was "not a question raised in the summary judgment briefing," *see Motion* [#53] at 8, it was Plaintiff's job to

---

[3] More recently, other courts—including one in this district—have diverged from *Wheeler*, distinguishing it on various grounds, and holding that continuous seepage exclusions apply to all damage, even damage sustained in the short term. *See Marmel v. Safeco Ins. Co. of Am.*, No. 20-cv-03845-RMR-MEH, 2022 WL 17976731, at *3-5 (D. Colo. Aug. 8, 2022); *Karon v. Safeco Ins. Co. of Am.*, No. CV-20-01522-PHX-DJH, 2021 WL 3419037, at *4-5 (D. Ariz. Aug. 5, 2021); *Croxdale v. Travelers Home & Marine Ins. Co.*, No. 4:24-cv-00048-RGE-SBJ, 2025 WL 2888367, at *5 (S.D. Iowa June 23, 2025). The Court need not take a side for purposes of resolving the Motion [#53] because, even assuming *Wheeler* remains good law, it does not apply to these facts.

raise it, not the Court's. Indeed, with no facts suggesting that the damages were severable and no argument asserting the same, it strains credulity to expect the Court to raise the theory and manufacture this narrow avenue of recovery on Plaintiff's behalf.

Because Plaintiff has not shown clear error, the Court denies reconsideration on this ground. *Servants of the Paraclete*, 204 F.3d at 1012.

**B. Fact Finding**

Plaintiff next argues that the Court entered factual findings regarding the timing of plaintiff's damages that were unsupported by the record and were not properly before the Court. *Motion* [#53] at 8. Specifically, Plaintiff asserts that "the list of nine bullet-point factual findings to which the Court cites in granting summary judgment in favor of Defendant . . . contains several findings which should have been construed in Plaintiff's favor and others that are clearly and unequivocally disputed." *Id.* at 9.

Plaintiff's first example is the second fact that the Court identified: "In March 2020, Mainline's CFO told Plaintiff's manager that a 'musty smell,' fruit flies, and dampness were present near the stairwell that stood directly above the uncapped sewer pipe." *Order* [#48] at 12. Plaintiff points out what it deems as an inconsistency within the Court's analysis. The Court concluded that "a reasonable jury might not be persuaded that a 'musty smell' is sufficient to prove that standing water existed underneath the floor" in 2020, *id.* at 10, but then the Court "inexplicably" still identified that fact as one of nine that support granting summary judgment in Defendant's favor on the Continuous Seepage Exclusion. Plaintiff's argument misses the point. The summary judgment briefing presented the Court with two distinct questions: (1) whether a reasonable jury could find that the leak started during the operative policy period beginning in January 2023, and (2) whether a reasonable jury

could find that the leak started less than 14 days from its discovery. In assessing the undisputed facts, the Court answered the first question "yes" and the second question "no." In other words, reasonable juries considering the existence of a musty smell in 2020 could reach different conclusions about whether the leak could have started in 2023. However, all nine facts *together* led the Court to the opposite conclusion with respect to whether the leak could have occurred in under 14 days. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Here, Plaintiff presented *no* evidence suggesting that the leak could have commenced in under 14 days or that its short-term and long-term damages were severable. Its bare assertion that there were "genuine disputes of fact over (i) when the water damage began, and (ii) whether leakage was continuous or repeated" was insufficient to survive a summary judgment motion. *See Marmel v. Safeco Ins. Co. of Am.*, No. 20-cv-03845-RMR-MEH, 2022 WL 17976731, at *3 (D. Colo. Aug. 8, 2022) ("[T]he Court's inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting *Anderson*, 477 U.S. at 251-52).

Plaintiff's second example is the third fact that the Court identified: "Mainline's CFO testified that, after the 2020 email, he experienced musty smells and sewage smells that 'had become pervasive at times throughout the building.'" *Order* [#48] at 12 (citing *Def.'s Ex B, Caselli Dep.* [#39-3] at 33:23-24; *Fact Table* [#44-1] ¶ 40). Plaintiff argues that the CFO did not testify precisely *when* he noted these purported odors in the building, other than sometime after March 2020, so Plaintiff must be granted the favorable inference that

these particular odors were noted in October or November 2023. Plaintiff overlooks the surrounding context of the CFO's clear and unambiguous deposition testimony:

> A: I don't remember if—I didn't send any further emails on the fruit flies. It did not make a difference with the smells.
>
> Q: So **a year later from your first [March 2020] email** about smells, you're still experiencing both the musty smell and the horrible smells?
>
> Counsel: Object to form.
>
> A: Yes.
>
> Q: And so we've talked about smells in the stairwell. Were there other places in the Mainline property that you could that you experienced either of the smells you've described?
>
> A: Yes, they both had become pervasive at times throughout the building.

*Def.'s Ex B, Caselli Dep.* [#39-3] at 33:11-24 (emphasis added). Based on this deposition testimony, the Court finds it likely that, if this matter went to trial, the CFO would testify that he was still experiencing musty and horrible smells a year after sending his March 2020 email—in and around 2021. This testimony undermines Plaintiff's position.

Plaintiff next takes issue with the Court reiterating its own allegation that "[r]oughly 5,000 gallons of raw sewer water had accumulated under the stairwell and the restaurant's dining room floor by November 2023." *Order* [#48] at 13 (citing *Compl.* [#3] ¶ 33; *Plaintiff's Motion* [#28] at 6). Plaintiff argues that "[t]he volume of sewage discovered in the crawlspace of Plaintiff's building is not proof that leaks continued for 14 days or longer absent further proof (preferably expert testimony) establishing the flow rates of the relevant leaks and calculations of how long such quantified leaks would take to deposit 5,000 gallons into the crawlspace." *Motion* [#53] at 9. Plaintiff has a point. The fact of the

volume of raw sewage water is likely insufficient by itself to establish the duration of the leak. However, this fact alone is not why the Court granted summary judgment in Defendant's favor. The Court granted summary judgment based on the significant probative evidence, taken in combination, suggesting that the leak occurred over a long period of time in comparison to the complete paucity of evidence to the contrary. *Anderson*, 477 U.S. at 251-52.

Because Plaintiff has not shown clear error, the Court denies reconsideration on this ground. *Servants of the Paraclete*, 204 F.3d at 1012.

**C. Complete Entry of Judgment**

For the first time in its Reply in Support of its Motion to Alter Judgment [#57], Plaintiff asserts that the Court's order did not include a ruling on the merits of its "liability claim," so entry of judgment against Plaintiff on all claims was premature. *Reply* [#57] at 8. For support, Plaintiff explains that its asserted causes of action, although centered on property damage, also included verbiage about a liability claim. *See Compl.* [#3] ¶¶ 72-73, 80, 88, 91. Thus, Plaintiff asks the Court to "revive" its liability claims.

A close review of the Complaint [#3] reveals that, on January 9, 2024, Mainline's CFO emailed representatives for Plaintiff outlining the costs that Mainline had thus far borne and stating that "[i]t is Mainline West's expectation that all such costs will be borne by Cart Driver or its affiliates." *Compl.* [#3] at 6, 196-97. Thus, Plaintiff opened a claim with Defendant for liability coverage and Defendant initiated a claim number. *Id.* ¶ 46. The Complaint goes on to allege that "Mainline has not yet presented Cart Driver with any invoices or demands for payment regarding Mainline's damages," and "[u]pon information

and belief, Society has not contacted Mainline directly to adjust the Liability Claim." *Id.* ¶¶ 49-50.

On review of Plaintiff's belated argument, the Court ordered Defendant to file a Surreply on the issue. In it, Defendant explains as follows:

> This Liability Claim was not addressed in Society's Motion for Partial Summary Judgment [Doc. No. 39] because Mr. Caselli, the representative of Mainline, testified in June 2025, that Mainline had not done anything to pursue its liability claim against Cart Driver. [Doc. No. 39-3, Caselli depo, p.71, ll.10-20]. Additionally, Cart Driver's 30(b)(6) representative testified that as of September 24, 2025, Mainline had not filed any lawsuit against Cart Driver for any reason. *See,* Exhibit A, 30(b)(6) Deposition of Cart Driver, at p.192, ll.21-25.
>
> As a matter of public record, there is no pending lawsuit filed by Mainline against Cart Driver. Although Society opened a liability claim at the request of Plaintiff, there is no liability claim presented by Mainline to which the Liability Section of the policy affords coverage.

*Surreply* [#59] at 2. Defendant goes on to explain that, in any event, any claim Mainline would make would likely be excluded under Plaintiff's policy. *See id.* at 2-3.

The Court finds that, absent any allegation in Plaintiff's Complaint [#3] that Mainline has actively pursued any liability claim against Plaintiff, and in the face of evidence to the contrary, Plaintiff's liability coverage claims are, at best, not ripe, and at worst, seeking an advisory opinion. *N.M. Trappers Ass'n v. Torrez*, 178 F.4th 561, 570 (10th Cir. 2026) ("For an issue to be ripe, 'it must present a live controversy, ripe for determination, advanced in a clean-cut and concrete form.'"); *Allegis Inv. Advisors v. Certain Underwriters at Lloyd's London*, No. 2:17-cv-01048-JNP-EJF, 2018 WL 4189542, at *6 (D. Utah Aug. 14, 2018) ("A case or controversy does not yet exist because Underwriters cannot allege the details of claims that insureds have not yet made for suits that third parties have not yet brought. A case or controversy must exist before a federal court can exercise jurisdiction."), *report and recommendation adopted*, 2018 WL 4188467 (D. Utah

Aug. 31, 2018). Therefore, the Court is persuaded that its entry of judgment concerning Plaintiff's liability claims must be vacated and, instead, dismissed without prejudice. *See Tear Drop Cattle Co. LLC v. Devon Energy Prod. Co. LP*, No. 24-8001, 2025 WL 1923881, at *3 (10th Cir. July 14, 2025) ("A judgment should be vacated if a district court lacked subject-matter jurisdiction to enter it."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[A] dismissal for lack of jurisdiction should be entered without prejudice.").

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY ORDERED that the Motion [#53] is **GRANTED in part and DENIED in part**. The Court's entry of judgment as amended as follows:

- Plaintiff's Motion for Partial Summary Judgment [#28] is **DENIED**.
- Defendant's Motion for Partial Summary Judgment [#39] is **GRANTED**.
- The Clerk of Court is directed to enter summary judgment in this case in favor of Defendant Society Insurance and against Plaintiff Cart Driver-Highlands with respect to Plaintiff's property damage claims.
- Plaintiff's third-party liability claims are **DISMISSED without prejudice**.

Dated: September 6, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge